ORIGINAL

1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   JONATHAN A. ELDREDGE, Bar No. 238559
    One Walnut Creek Center
3   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
4   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
5
    MORRIS JAMES LLP
6   P. Clarkson Collins, Jr., *Pro Hac Vice Pending*
    Jason C. Jowers, *Pro Hac Vice Pending*
7   500 Delaware Avenue, Suite 1500
    Wilmington, Delaware 19801
8   Telephone: (302) 888-6800
    Facsimile: (302) 571-1750
9   E-mail: pcollins@morrisjames.com
            jjowers@morrisjames.com
10
    Attorneys for E. I. du Pont de Nemours and Company
11

FILED

APR - 6 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15   E. I. DU PONT DE NEMOURS AND              )   Case No. **C11-01665** MEJ
     COMPANY,                                  )
16                                             )   **COMPLAINT FOR:**
                                               )
17                Plaintiff,                   )   **1. Misappropriation of Trade Secrets**
                                               )
18        v.                                   )
                                               )   **DEMAND FOR JURY TRIAL**
19   USA PERFORMANCE TECHNOLOGY,               )
     INC., PERFORMANCE GROUP (USA),            )
20   INC., WALTER LIEW, and JOHN LIU,          )
                                               )
21                                             )
                  Defendants.                  )
22   _____)

23

24        Plaintiff E. I. du Pont de Nemours and Company ("DuPont") hereby complains against

25   Defendants USA Performance Technology, Inc. ("USA PTI"), Performance Group (USA), Inc.

26   ("Performance Group"), Walter Liew, and John Liu as follows:

27   ///

28   ///

1 **NATURE OF ACTION**

2       1.      Defendants have wrongfully obtained and possess confidential, proprietary, trade

3 secret materials providing detailed specifications for DuPont's chloride-route titanium dioxide

4 ("$TiO_2$") pigment manufacturing process. $TiO_2$ is a white pigment used in materials ranging

5 from paints to plastics to paper. Because of its wide ranging applications, global sales of $TiO_2$

6 pigment annually exceed an estimated 5 million tonnes. DuPont's sales of $TiO_2$ pigment amount

7 to approximately one-fifth of all TiO2 pigment sales, which makes DuPont the world's largest

8 producer of $TiO_2$ pigment.

9       2.      DuPont's process is superior to all comparable $TiO_2$ pigment manufacturing

10 processes. Because of the continued technical innovations that DuPont has incorporated into its

11 process, it can safely and reliably produce $TiO_2$ pigment at a far greater capacity than its

12 competitors. DuPont's innovations have also allowed it to create a process that produces $TiO_2$

13 pigment at significantly lower cost than other $TiO_2$ pigment manufacturers and of consistently

14 higher quality.

15       3.      Rather than investing the funds, effort, and years, if not decades, necessary to

16 create an efficient, safe, and profitable $TiO_2$ pigment manufacturing process, Defendants

17 misappropriated DuPont's proprietary, secret technology. On information and belief, Defendants

18 are in the process of providing or have provided the specifications for DuPont's $TiO_2$ pigment

19 process to one or more of DuPont's competitors in China. DuPont seeks preliminary and

20 permanent injunctions to prevent Defendants from using or disseminating DuPont's trade

21 secrets, an order requiring Defendants to return DuPont's $TiO_2$ pigment manufacturing process

22 information, and damages.

23 **PARTIES, JURISDICTION AND INTRADISTRICT ASSIGNMENT**

24       4.      Plaintiff DuPont is a Delaware corporation that maintains its headquarters in

25 Wilmington, Delaware, and is a leading innovator in the business of the research, development,

26 and manufacture of chemicals and other substances.

27       5.      Defendant USA PTI is a California corporation, which identifies its address as

28 1300 Clay St., Suite 600, Oakland, California 94612.

6.      Defendant Performance Group is a California Corporation, which identifies its address as 360 Grand Avenue #186, Oakland, CA 94610-4840.  On information and belief, Performance Group is the alter ego of USA PTI.  The address for service of process for USA PTI listed with the State of California is Performance Group's address.  Also, USA PTI and Performance Group have virtually identical websites.  The agent for service of process for Performance Group is Christina Liew.  On information and belief, Christina Liew is a relative of Defendant Walter Liew.

7.      Defendant Walter Liew, the President of USA PTI, is a citizen of California or the People's Republic of China.

8.      Defendant John Liu is a citizen of California or the People's Republic of China. He holds a doctorate in engineering.  John Liu recently resigned from his position at his prior employer to become an employee of USA PTI.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because Defendants are residents of this judicial district and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.  Pursuant to Northern District Local Rules 3-5(b) and 3-2(d), assignment to the Oakland division is appropriate because Defendants are located in Alameda County."

## FACTUAL BACKGROUND

### $TiO_2$ Pigment and Its Uses

11.     $TiO_2$ pigment is a white pigment widely used in paint, plastics, and paper materials.  Generally, it provides opacity, ultraviolet protection, extended life, and improved performance to a wide variety of products.  The manufacture and sale of $TiO_2$ pigmentation products is such a valuable business, in part, because of the wide range of applications for the pigment.  Products from automotive paint to PVC piping to plastic packaging contain $TiO_2$ pigment.

1    12.    In the areas of residential, commercial, and industrial construction and
2    remodeling, $TiO_2$ white pigment is used in architectural paint, providing paint manufacturers the
3    ability to offer a wide variety of colors, with superior coverage ability. More $TiO_2$ pigment in
4    paint results in better coverage from the paint. For exterior paints, $TiO_2$ provides durability and
5    protection to the painted surface from ultraviolet rays from the sun.

6    13.    Many components of automobiles, both interior and exterior, contain $TiO_2$
7    pigment. Exterior automotive paint has become more durable, with more color variations
8    becoming available because of the inclusion of $TiO_2$ pigment into the paint. An increasing
9    number of exterior automotive parts are being replaced with lighter weight, scratch and dent
10   resistant high value plastic materials. DuPont's $TiO_2$ pigment plays a critical role in these plastic
11   parts, providing weather-resistant durability and color opacity. Inside the vehicle, many of the
12   parts are made of high value plastic materials, including dashboards, interior moldings and trim,
13   flooring and seat cushions to name a few. $TiO_2$ white pigment makes these features possible at a
14   cost efficient price.

15   14.    Pleasure boats, cruise ships, shipping vessels, rail cars and airplanes utilize $TiO_2$
16   white pigment. Similar to its uses in the automotive industry, $TiO_2$ pigment is used in various
17   paint and coatings for these vehicles as well as for many higher value plastic materials.

18   15.    DuPont also provides $TiO_2$ pigmentation for the plastics industry. $TiO_2$ pigment
19   enables plastics manufacturers to solve color, opacity and weatherability design issues. For
20   example, acrylic polymers are commonly pigmented with $TiO_2$ for both opaque and semi-opaque
21   applications. Opaque whites are used for appliances, communication, industrial and construction
22   end-uses, while translucent formulations are commonly used for back-illuminated advertising
23   and signboards.

24   16.    $TiO_2$ pigments are also widely used for residential and commercial building
25   materials. Almost all vinyl building products, including siding, windows, decks and fencing,
26   contain $TiO_2$ pigment. PVC pipe for plumbing and other uses also contains $TiO_2$ pigment. In
27   these products, $TiO_2$ pigment provides protection to the vinyl by absorbing the ultraviolet rays
28   from the sun. This prevents degradation of the vinyl, providing long lasting new appearance for

1    the lifetime of these products.  Both vinyl and laminate flooring contain $TiO_2$ pigment.

2         17.    DuPont also supplies $TiO_2$ to the paper and paperboard industry.  DuPont's

3    chloride-route continuous process allows rapid and tight particle size control, which results in

4    the most consistent mean particle size and consistent distribution in the industry.  Ultimately, the

5    $TiO_2$ pigment allows the paper and paperboard industry to achieve opacity targets.

6         18.    $TiO_2$ pigment is also used in a variety of other products, including plastic bags,

7    outdoor furniture, laminate products, inks, rubber, and elastomers.

8         19.    Because of the wide variety of applications, the global market for premium $TiO_2$

9    pigment annually amounts to approximately 4 million tonnes.

10              **DuPont's TiO2 Chloride-Route Process Leads the Industry**

11        20.    Since 1948 when DuPont developed the original chloride-route TiO2 process,

12   DuPont has been a pioneer in the area of manufacturing $TiO_2$ pigments.  DuPont is currently the

13   largest provider and the lowest cost producer of $TiO_2$ pigments.  Annually, DuPont sells

14   approximately 1 million tonnes of the total 5 million tonnes of $TiO_2$ pigment sold in the world.

15   Furthermore, DuPont has repeatedly been honored for the safety and health standards of its $TiO_2$

16   operations.  DuPont maintains its advantages in the area of $TiO_2$ pigment production, in part,

17   through its industry-leading process, the secrecy of which it carefully maintains.

18        21.    $TiO_2$ pigment may be produced through either a sulfate-route process or a

19   chloride-route process.  DuPont first invented the chloride-route process for the production of

20   $TiO_2$ in 1948, which it has modified and significantly improved over time.

21        22.    The $TiO_2$ pigment production process, whether sulfate or chloride, begins with

22   feedstock ores containing titanium.  The feedstock ores can range from ilmenite, which contains

23   approximately 50% $TiO_2$, to ores such as rutile, which contain more than 90% $TiO_2$.

24        23.    In DuPont's chloride-route process, in very general terms, the ore goes through

25   chlorination that produces titanium tetrachloride, which can be sold as a separate product or that

26   can be purified and oxidized to create the "pigment base."  The pigment base then goes through a

27   finishing process consisting of wet treatment, filtration, washing, drying, and grinding to produce

28   the $TiO_2$ pigment product.

24.     DuPont's chloride-route process has a variety of advantages over the sulfate-route process used by more conventional manufacturers. For example, the chloride-route process is a continuous process, while the sulfate-route process is a batch process. Additionally, it is a cleaner process that produces substantially less waste than the sulfate-route process. Finally, the chloride-route process produces $TiO_2$ pigment in the rutile crystalline form, which is the preferred form. The sulfate-route process inherently produces the anatase crystalline form, which requires additional processing to convert to a rutile crystalline form.

25.     Significantly, the vast majority of $TiO_2$ manufactured in China comes from the sulfate-route process. The current five-year economic plan for China calls for the development of chloride-route $TiO_2$ technology.

26.     Because DuPont's process is so superior to that of its competitors and because of the economic advantages DuPont enjoys due to that superiority, DuPont carefully safeguards its investment. DuPont transmits, receives, and destroys confidential information in a secure manner. DuPont employees are required to sign contracts agreeing to protect the secrecy of DuPont's confidential information.

27.     As for DuPont's $TiO_2$ process specifically, all electronic data systems that contain DuPont Titanium Technology documentation (drawings, equipment specs, instrument specs, logic diagrams, standard operating procedures, maintenance work practices, technology reports, etc.) require granted access.

28.     Within DuPont's Titanium Technologies division, the company further protects the information by compartmentalizing both it and access to it.

29.     In order to further protect the $TiO_2$ process, DuPont provides access to technology documentation for the *entire* $TiO_2$ process to only a few DuPont employees. These individuals have access on a business need or need-to-know basis.

/ / /

/ / /

/ / /

/ / /

COMPLAINT

1                **DuPont Establishes and Later Expands TiO$_2$**

2                **Pigment Plant in Kuan Yin, Taiwan**

3        30.     DuPont currently has TiO$_2$ plants in Edge Moor, DE, New Johnsonville, TN,

4 DeLisle, MS, Altamira, Mexico, and Kuan Yin, Taiwan. The Kuan Yin facility is DuPont's

5 newest and most modern TiO$_2$ pigment manufacturing facility.

6        31.     DuPont opened Kuan Yin in 1994 and expanded it in 2008. During both the

7 construction and expansion projects, DuPont established strict protocols to prevent the

8 possibility of contractors learning or transmitting any proprietary information in the Kuan Yin

9 Plant.

10        32.     Despite the many protections at the Kuan Yin facility and in the DuPont Titanium

11 Technologies business generally, DuPont's TiO$_2$ process used at the Kuan Yin facility has

12 become the target of misappropriation.

13                **USA PTI Misappropriates DuPont's TiO2 Process**

14        33.     In August 2010, DuPont received an anonymous letter indicating that a Walter

15 Liew of USA PTI and John Liu had embezzled TiO$_2$ pigment technologies from DuPont. The

16 anonymous letter also stated that Liew, Liu, and USA PTI had then sold the technologies to a

17 company in China.

18        34.     After receiving the anonymous letter, DuPont notified John Liu's alleged

19 employer of its investigation and to determine his employment status. That employer confirmed

20 that John Liu was an employee and stated that his responsibilities did not include working on

21 TiO$_2$, nor did that company engage in the manufacture of TiO$_2$.

22        35.     DuPont requested that the employer ascertain whether John Liu or others at the

23 company had communicated with Walter Liew of USA PTI on company computer assets. After

24 examining John Liu's computer records, the company confirmed that he had corresponded with

25 Walter Liew at USA PTI via email from his work computer. Additionally, the company

26 indicated that John Liu had conducted background research on TiO$_2$ on his work computer.

27        36.     In March 2011, the company provided DuPont with documents on Liu's company

28 computer relating to TiO$_2$ technology. In addition, the company provided documents that appear

Case3:11-cv-01665-JSW Document1 Filed04/06/11 Page8 of 15

1   to be related to $TiO_2$ technology and that were found on the company computers of two other

2   company employees that had interacted with Liu.

3                    **Documents in Liu's Possession Reflect**

4            **DuPont's Proprietary and Confidential Information**

5        37.    The documents in the possession of Liu reflect detailed knowledge of DuPont's

6   proprietary and confidential $TiO_2$ pigment process and access to DuPont's process flow diagrams

7   detailing the $TiO_2$ pigment process.

8        38.    After analyzing the documents provided by Liu's employer, DuPont identified

9   numerous pieces of information that are identical to the confidential, proprietary components of

10  DuPont's process.  Although the information is not identified as DuPont information in the

11  documents, the information matches DuPont's confidential process exactly in a variety of

12  respects.  The very specific technical details to DuPont's $TiO_2$ process in the documents are not

13  available from any public source, and DuPont has not authorized the disclosure of such

14  information to them.  These documents are evidence that Liu unlawfully possessed DuPont's

15  proprietary and secret information regarding its $TiO_2$ process.

16       39.    The misappropriated information includes details of DuPont's chlorine flows.  In

17  DuPont's $TiO_2$ chloride process, chlorine flows to the chlorine vaporizers to convert liquid

18  chlorine into vapor.  The materials in the possession of Liu identify DuPont's specific chlorine

19  flows as well as the number of vaporizers.

20       40.    Liu also obtained the location of control valves in DuPont's $TiO_2$ process.  The

21  location of control valves in DuPont's $TiO_2$ process is neither obvious nor available from any

22  public source.

23       41.    Liu misappropriated specifications on the sizing of over a hundred pieces of

24  equipment and instrumentation used in the manufacturing process.  DuPont developed the

25  specifications for the sizing of equipment intended for use in the handling and processing of

26  material of the type required for DuPont's $TiO_2$ chloride process over the course of many years,

27  and this information is unavailable through public sources.

28  / / /

42.     Liu also obtained the specifications for the process flows to the aluminum chloride generator used in DuPont's TiO$_2$ process. DuPont uses aluminum chloride generators to produce material *in situ* for consumption in the oxidation step of the process. Aluminum chloride generators are not commonly used across the industry for the production of TiO$_2$. Because of its use of an aluminum chloride generator, DuPont is able to avoid the use of anhydrous aluminum chloride as a feedstock, which provides a significant cost savings. DuPont based the specifications for the process flows to its aluminum chloride generator on the specific design of its material and years of experimentation and experience with that generator. The only way Liu could obtain the details on the process flows to the aluminum chloride generator is from misappropriated confidential DuPont information.

43.     DuPont's TiO$_2$ pigment process utilizes a chlorine catch tank. This is unique to the DuPont process. Not even The Chlorine Institute, the most respected public source of information on chlorine handling, suggests the use of a chlorine catch tank. Liu could only obtain this information through DuPont's confidential, proprietary materials.

44.     Additionally, Liu obtained data identifying the specific pressure DuPont uses to unload chlorine. This pressure is not available from public sources and cannot be readily determined through engineering calculations.

45.     DuPont spent years determining the specifications for piping, types of piping, and insulation of piping used in its TiO$_2$ process. Specifically, the piping for the chlorine vaporizer header, piping for the fuel header feeding the oxidation building, piping of vapor flow meters, piping for the oxygen flow meter, and the pipeline branching off from the oxidation area found in the materials provided by Liu's employers match that used by DuPont's Kuan Yin Plant. The use of electric heat tracing in the chlorine piping in found in the documents also corresponds with the same practice at DuPont's Kuan Yin Plant.

46.     Liu similarly misappropriated the specifications for the recycle gas temperature and composition. Recycle gas temperature is limited by the type of bag filter used in the oxidation process. Knowledge of bag filter technology as applied to the oxidation of titanium tetrachloride would be required to specify the values. Again, this information is non-public and

1   information contained in the documents provided by Liu's employer contains detailed
2   specifications matching DuPont's specifications.

3          47.     Although the materials in the possession of Liu are not labeled "DuPont," the fact
4   that all of the non-public specifications discussed above unique to the DuPont process cannot be
5   a coincidence.  Furthermore, other details of the process in the possession of Liu indicate it is
6   DuPont's $TiO_2$ process:

7          a)      The documents reflect the use of four micronizers, which are pigment grinding
8                  systems, in support of a particular throughput.  Only DuPont's process is efficient
9                  enough to operate at the level of throughput identified.  Furthermore, no grinding
10                 systems are available from publicly available information that could support this
11                 level of throughput with only four units.

12         b)      Similarly, a process model in the documents suggests an upper operating rate of
13                 20 tons per hour, and only DuPont's process is capable of operating at this rate.
14                 DuPont's Kuan Yin Plant operates at this precise rate.

15         c)      The documents specify the use of fatty acid as a purification treating agent.  Only
16                 DuPont uses tallow based fatty acid for purification in the $TiO_2$ process.

17         d)      The documents include the pressure transmitter specification for conveying
18                 cement in a cementation process.  Cementation of process solids is practiced by
19                 the Kuan Yin Plant.

20         48.     In summary, Liu, an engineer who did not work on the $TiO_2$ process in his role at
21   his employer, could not have independently and lawfully generated a $TiO_2$ process that exactly
22   matched the specifications of the DuPont's industry-leading process and the particular
23   specifications used at the Kuan Yin Plant.  After examining these documents, DuPont's own
24   engineers concluded that Liu and/or others working with him must have had access to DuPont's
25   confidential engineering documents.  A recent interview with Liu confirmed that he and his two
26   associates had been provided with $TiO_2$ process flow charts by Walter Liew of USA PTI.

27   / / /

28   / / /

1    **DuPont Interviews John Liu and His Co-Workers**

2    49.    In late March 2011, DuPont interviewed Liu and several of his co-workers. They

3    confirmed that they had been approached by Walter Liew and USA PTI approximately one year

4    earlier. USA PTI requested assistance in filling in the gaps to a $TiO_2$ process.

5    50.    Mr. Liew first approached John Liu and showed him TiO2 process flow diagrams

6    that he needed assistance in completing. John Liu then contacted his co-workers, both of whom

7    also held doctorates in engineering, and introduced them to Walter Liew.

8    51.    In his interview, one of Liu's co-workers claimed that he told Walter Liew and

9    John Liu that he was unable to help because $TiO_2$ was outside of his field of expertise.

10    52.    Another co-worker, on the other hand, began consulting for John Liu in an

11    attempt to complete the process flow chart. John Liu paid this co-worker for this work. As will

12    be discussed below, Walter Liew and John Liu conspired to provide this misappropriated

13    information to DuPont's competitors in China for their own profit. All of the activities alleged

14    above occurred outside the scope of the employment of John Liu and his co-workers and were

15    not authorized by their employer. That employer is not implicated in any of the conduct alleged

16    in this complaint.

17    **John Liu Joins Walter Liew and USA PTI to Market**

18    **DuPont's Proprietary Information**

19    53.    Prior to March 2011, John Liu submitted his letter of resignation to his employer.

20    He stated that he was leaving the company, where he earned a six-figure salary, to join USA

21    PTI. Liu agreed to manage USA PTI's project to consult on the manufacture of a $TiO_2$ chloride

22    plant in China.

23    54.    On information and belief, Walter Liew and John Liu traveled to China together

24    on two occasions in the past year to market their misappropriated information on DuPont's $TiO_2$

25    process.

26    55.    On information and belief, on one of these two trips, Walter Liew and John Liu

27    met with the CEO of a company in China that manufactures titanium products. On information

28    and belief, Walter Liew has a long-standing relationship with this company.

1    56.   On information and belief, USA PTI, Walter Liew, and John Liu have used, are in

2    the process of using, or intend to use DuPont's proprietary, confidential, and secret materials that

3    they have misappropriated to assist in the construction of a $TiO_2$ chloride plant in China for the

4    Chinese company Walter Liew and John Liu met with on their trip to China and/or other $TiO_2$

5    manufacturers.

6                         **DuPont Lack's an Adequate Remedy at Law**

7    57.   DuPont has no adequate remedy at law for the wrongful misappropriation of

8    confidential and trade secret information by Defendants.  On information and belief, Defendants

9    either have disclosed, are in the process of disclosing, or intend to disclose DuPont's $TiO_2$

10   process to one or more companies in China.  The release of the information in the possession of

11   Defendants to a competitor of DuPont would provide to this competitor information about

12   DuPont technologies, processes, and techniques that are closely held by DuPont.

13   58.   Although a number of companies are capable of producing $TiO_2$ and some

14   companies have developed a chloride process, DuPont's competitors have been unable to create

15   a comparable chloride-route process that is as efficient, cost-effective, and safe as DuPont's or

16   that operates at the capacity or quality of DuPont's process.  It is DuPont's superior process that

17   provides it a competitive advantage and allows it to sell more $TiO_2$ pigment than any company in

18   the world.

19   59.   Defendants' dissemination of the improperly obtained material to a competitor of

20   DuPont would cause irreparable harm to DuPont.

21                                    <u>COUNT I</u>

22                      **(Misappropriation of Trade Secrets)**

23   60.   DuPont incorporates by reference foregoing paragraphs 1 through 59 as if set

24   forth herein.

25   61.   DuPont's $TiO_2$ pigment manufacturing process derives independent economic

26   value from not being known and not being ascertainable through proper means.  DuPont's

27   process is superior to all comparable $TiO_2$ manufacturing processes in the world.  Because of the

28   continued technical innovations that DuPont has incorporated into the process, it can produce

1   TiO$_2$ pigment at a far greater capacity than its competitors.  DuPont's innovations have also

2   allowed it to create a process that produces TiO$_2$ pigment at significantly lower cost than other

3   TiO$_2$ pigment manufacturers.  Moreover, DuPont's superior process permits it to produce

4   consistently high quality pigment for a wide range of practical applications.

5           62.     DuPont has also taken reasonable efforts to maintain the secrecy of its TiO$_2$

6   process.  DuPont transmits, receives, and destroys confidential information in a secure manner.

7   DuPont employees are required to sign contracts agreeing to protect the secrecy of DuPont's

8   confidential information.

9           63.     As for DuPont's TiO$_2$ process specifically, all electronic data systems that contain

10  DuPont Titanium Technology documentation (drawings, equipment specs, instrument specs,

11  logic diagrams, standard operating procedures, maintenance work practices, technology reports,

12  etc.) require granted access.  The company further protects the information by

13  compartmentalizing both it and access to it.

14          64.     Additionally, DuPont restricts access to technology documentation for the *entire*

15  TiO$_2$ process to only a few DuPont employees.  These individuals have access on a business

16  need or need-to-know basis.

17          65.     Defendants have misappropriated DuPont's TiO$_2$ trade secrets.  The documents

18  on the computers provided by Liu's employer confirm that they possess DuPont's proprietary

19  and confidential process.  There is no legitimate reason that DuPont's proprietary and

20  confidential information would be in the Defendants' possession.  Walter Liew, John Liu, and

21  USA PTI have used, are using, or intend to use this misappropriated information to construct

22  TiO$_2$ plants in China.  Liew, Liu, and USA PTI are aware that their possession of DuPont's

23  materials is unauthorized.

24          66.     As a result of the wrongful misappropriation by Defendants, DuPont has been

25  damaged in an amount in excess of the jurisdictional minimum of this Court.  Moreover, DuPont

26  will be irreparably harmed by further dissemination of its industry-leading TiO$_2$ process to its

27  competitors.  Accordingly, Defendants seek to enjoin Defendants from using or disseminating

28  DuPont's TiO$_2$ process.  DuPont also seeks an order requiring Defendants to return all materials

1    relating to DuPont's $TiO_2$ process.

2         67.    Because Defendants have acted willfully and maliciously, DuPont is entitled to

3    exemplary damages, in an amount equal to double actual damages.

4         68.    Because Defendants have acted willfully and maliciously, DuPont is entitled to an

5    award of attorneys' fees.

6                                        **PRAYER**

7         WHEREFORE, DuPont prays for judgment against Defendants as follows:

8         a.     For a preliminary and permanent injunction requiring that Defendants, and any

9    persons acting in concert with Defendants, return all misappropriated confidential or trade secret

10   information;

11        b.     For a preliminary and permanent injunction preventing Defendants, and any

12   persons acting in concert with Defendants, from making any further actual or threatened release

13   of any DuPont confidential or trade secret information;

14        c.     For a preliminary and permanent injunction barring Defendants and any persons

15   acting in concert with Defendants from using any DuPont trade secrets relating to its TiO2

16   process;

17        d.     For a preliminary and permanent injunction barring Defendants from working in,

18   consulting for or working with the TiO2 chloride process manufacturing industry;

19        e.     For damages arising from Defendants' misappropriation of trade secrets;

20        f.     For exemplary damages for Defendants' willful and malicious misappropriation

21   of trade secrets;

22        g.     For attorneys' fees and costs incurred by DuPont in this action; and

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    h.    For such other relief as this Court determines is just and proper.

2

3

4    Dated: April 6, 2011

5                                            GLYNN & FINLEY, LLP
                                             CLEMENT L. GLYNN
6                                            JONATHAN A. ELDREDGE
                                             One Walnut Creek Center
7                                            100 Pringle Avenue, Suite 500
                                             Walnut Creek, CA 94596

8                                            MORRIS JAMES LLP
                                             P. Clarkson Collins, Jr.
9                                            Jason C. Jowers
                                             500 Delaware Avenue, Suite 1500
10                                           Wilmington, Delaware  19801

11

12                                           By _____

13                                              Attorneys for Plaintiff
                                                E. I. du Pont de Nemours and Company
14

15                           **DEMAND FOR JURY TRIAL**

16   DuPont demands a jury trial on all claims so triable.

17

18   Dated: April 6, 2011

19                                           GLYNN & FINLEY, LLP
                                             CLEMENT L. GLYNN
20                                           JONATHAN A. ELDREDGE
                                             One Walnut Creek Center
21                                           100 Pringle Avenue, Suite 500
                                             Walnut Creek, CA 94596

22                                           MORRIS JAMES LLP
                                             P. Clarkson Collins, Jr.
23                                           Jason C. Jowers
                                             500 Delaware Avenue, Suite 1500
24                                           Wilmington, Delaware  19801

25

26                                           By _____

27                                              Attorneys for Plaintiff
                                                E. I. du Pont de Nemours and Company
28

COMPLAINT