1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   MORGAN K. LOPEZ, Bar No. 215513
    JONATHAN A. ELDREDGE, Bar No. 238559
3   One Walnut Creek Center
    100 Pringle Avenue, Suite 500
4   Walnut Creek, CA 94596
    Telephone: (925) 210-2800
5   Facsimile: (925) 945-1975

6   MORRIS JAMES LLP
    P. Clarkson Collins, Jr., *Pro Hac Vice Pending*
7   Jason C. Jowers, *Pro Hac Vice Pending*
    500 Delaware Avenue, Suite 1500
8   Wilmington, Delaware 19801
    Telephone: (302) 888-6800
9   Facsimile: (302) 571-1750
    E-mail: pcollins@morrisjames.com
10           jjowers@morrisjames.com

11  Attorneys for E. I. du Pont de Nemours and Company

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  E. I. DU PONT DE NEMOURS AND          )   **Case No. 3:11-cv-01665-JSW**
    COMPANY,                              )
16                                        )   **REPLY IN SUPPORT OF MOTION TO**
                                          )   **STRIKE CERTAIN ALLEGATIONS IN**
17          Plaintiff,                    )   **AND EXHIBITS TO DEFENDANTS**
                                          )   **USA PERFORMANCE TECHNOLOGY**
18          v.                            )   **INC. AND WALTER LIEW'S ANSWER**
                                          )   **AND COUNTERCLAIM TO**
19  USA PERFORMANCE TECHNOLOGY,           )   **PLAINTIFF'S COMPLAINT**
    INC., PERFORMANCE GROUP (USA),        )
20  INC., WALTER LIEW, and JOHN LIU,      )   **Date:**    **July 1, 2011**
                                          )   **Time:**    **9:00 a.m.**
21          Defendants.                   )   **Before:**  **Honorable Jeffrey S. White**
    _____)

22  I.   **INTRODUCTION**

23          We live in a world in which the Big Lie approach is practiced not only by politicians, but

24  by many others as well.  Even in Federal court, where Rule 11 sets clear standards, that approach

25  is all too common.  It is not the proper object of a motion to strike—or opposition to such a

26  motion—to try the merits of the dispute.  Those merits will soon be dealt with, and the Court will

27  make appropriate judgments regarding whether E.I. DuPont de Nemours and Company

28  ("DuPont") – which has been the world leader in the production of titanium dioxide ("TiO2") for

- 1 -

1  decades – has stolen trade secrets from defendant USA Performance Technology Inc. ("USA

2  PTI"), or whether, as alleged in the complaint, USA PTI and its principal, defendant Walter

3  Liew, have improperly misappropriated valuable trade secrets of DuPont. The purpose of the

4  motion to strike, as contemplated by Federal Rule 12(f), is to remove scandalous or impertinent

5  matter from the pleadings. The defendants could have gracefully acknowledged that their

6  pleading contained such matter, and agreed to excise it. Instead, they have doubled-down,

7  displaying a disregard for the Rules that govern federal litigation.

8      Defendants struggle to conjure a reason why alleged anti-Chinese bias would be

9  "material" to a case of this sort. Their arguments would be embarrassing to most litigants. They

10  likewise seek to justify their use of allegations regarding other lawsuits and articles critical of

11  DuPont having nothing to do with the dispute in this case, and they attach to their opposition

12  other fruits of their web-surfing. If there were any doubt that the true objective of the defense is

13  to publish improper character evidence and to defame DuPont – to let DuPont know that the

14  defendants intend to fight dirty – there can be no doubt following review of their opposition.

15      The motion to strike should be granted, and the defense admonished that such tactics,

16  should they be repeated, will be dealt with severely.

17  **II.  ARGUMENT**

18      **A.  Defendants' accusation of DuPont being motivated by racism should be
           stricken.**

19

20      Defendants fail to explain why it is material to accuse their litigation adversary of racism.

21  The issue in this case is whether defendants wrongfully misappropriated trade secrets of DuPont.

22  DuPont will show that is exactly what has occurred. DuPont has the burden of proof as to those

23  claims, and will be prepared to carry that burden. That is the material legal issue.

24      Without benefit of citation, defendants argue that "DuPont's anti-Chinese sentiment is

25  obvious—whether conscious or unconscious—from its pleadings, and its prejudice is proper to

26  disclose, at least to the Court, if not the jury" (Opp. 7:17-18). DuPont's motive is to protect is

27  valuable trade secrets. To suggest, as defendants do, that DuPont is motivated by racism is a

28  textbook example of trying to deflect focus by the introduction of scandalous matter. In today's

   society, playing the race card is a well-known tactic to divert attention from the merits of an

1   argument.  Such a tactic has no place in a federal courtroom.  Defendants' argument that "intent

2   and motivation are relevant to willful and punitive damages calculations [sic] for both trade

3   secret and copyright infringement" (Opp. 7: 13-16) is an absurd proposition, and one for which

4   no authority is offered.  It will soon be clear that the claim that DuPont has misappropriated trade

5   secrets of defendants is spurious.  But, as the plain language of California's punitive damage

6   statute makes clear, the evidence of willfulness is shown not by what allegedly motivated

7   conduct, but by the conduct itself.  *See* Cal. Civ. Code § 3294(a),(c)(1-3) (allowing for punitive

8   damages where defendant is guilty of "oppression fraud or malice" and defining each term with

9   respect to the "conduct" that must be demonstrated).  Thus, DuPont will show that the defendants

10   stole DuPont trade secrets to gain an unfair advantage in the marketplace—gaining for immediate

11   use technology that DuPont has developed and protected over decades.  Although the financial

12   motive of defendants is obvious, it would not matter what motivated the theft—their punitive

13   liability will be based on assessment of their conduct, not their motives.  By like reasoning, even

14   if defendants' preposterous charge of racial motivation were true, it is immaterial.  DuPont's

15   conduct will be evaluated, not its motive.

16        Defendants also seek to justify their improper pleading on the basis that Rule 12(f)

17   motions are not favored (Opp. at 4:4-8).  What defendants neglect to mention is that when the

18   material is scandalous and impertinent on its face federal courts have no qualms about striking

19   such allegations.  For example in *Pigford v. Veneman*, 225 F.R.D. 54, 55 (D.D.C. 2005), the

20   court *sua sponte* struck a pleading entitled "notice of unprofessional conduct" which it found

21   "unprofessional, harassing and irrelevant."  As support for its decision to not only strike the

22   "notice" as scandalous but also to "admonish[] all counsel to conduct themselves courteously and

23   professionally," the court specifically referenced interactions in which plaintiffs' counsel had

24   accused the Justice Department of racism.  *Id.* at 56; *see also Alvarado-Morales v. Digital Equip.*

25   *Corp.*, 843 F.2d 613, 618 (1st Cir. 1988) (affirming that use in complaint of terms such as

26   "concentration camp," "brainwash" and "torture" and similes such as "Chinese communists in

27   Korea" had no place in the pleadings and could properly be stricken as scandalous matter that

28   ///

1 were mere "superfluous descriptions"); *Hohensee v. Watson*, 188 F.Supp. 941, 943 (D.C. Pa.

2 1959) (striking as scandalous complaint rife with derogatory allegations).

3      Finally, defendants' fall back argument that the Court can strike this allegation at a later

4 date should be seen for what it is:  an attempt to maintain in the public record for as long as

5 possible a salacious and groundless accusation.  The time to deal with this is now, and defendants

6 have not offered any cogent reason or justification for doing otherwise.

7    **B.    Impertinent references to DuPont's environmental record should also be
         stricken.**

8

9      Defendants' defense of their reference to, and attachment of, certain information

10 regarding DuPont's environmental history—including a hit piece by the United Steel Workers

11 Union—is likewise without substance.  Again, defendants argue that such information bears on

12 DuPont's *motivation* in suing them.  According to defendants, DuPont hopes to slow them down

13 so that DuPont can compete with them more effectively in China.

14      Again, the issue is whether the defendants have misappropriated DuPont's trade secrets.

15 DuPont will prove that they have.  Defendants understandably wish to deflect the focus away

16 from what they stole, and to conjure instead an alternative reality in which DuPont needs what

17 they supposedly have invented.  Were DuPont's technology not so valuable and the issues in suit

18 not so serious, defendants' fantasy world would be laughable.[1]  As DuPont shall show, the

19 defendants have never been players in the world of TiO2, and as alleged in the complaint, they

20 have resorted to improper methods to enter that market.

21      The information that DuPont has asked the Court to strike has nothing to do with the

22 process for manufacturing TiO2 or DuPont's efforts to build a TiO2 plant in China.  Rather, it

23 concerns partisan allegations regarding DuPont's past environmental record (Opening Br. at

24 3:13-22).[2]  Courts routinely hold that "[s]uperfluous historical allegations," such as these, "are

25 _____

26    [1]  Defendants claim that DuPont has misappropriated their trade secrets was not, of course,
the subject of a claim or even a comment until defendants were confronted by DuPont in this
27 litigation.
      [2]  The paragraph of defendants' counterclaim that DuPont seeks to strike (¶ 2) is pled on
28 "information and belief," and scandalous allegations based on nothing but rumor are ripe for the
striking.  *See, e.g., Talbot v. Roger Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992)
(finding that district court did not abuse its discretion in striking as scandalous paragraphs of

1   properly subject to a motion to strike." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal.

2   2005) (striking as immaterial allegations that doctor acted unprofessionally by giving plaintiff her

3   biopsy results at her place of work) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th

4   Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023 (1994) and *Healing v. Jones*,

5   174 F.Supp. 211, 220 (D.C. Ariz. 1959)).  Thus, the Court need not indulge defendants by

6   analyzing whether the purported "environmental record" is accurate because it is immaterial and

7   irrelevant – on its face – to the issues in this litigation.  The cases recognize that allegations

8   referencing other litigation are "improper," "irrelevant," and "prejudicial" when they are asserted

9   in an unrelated complaint before the court.  *Kent v. AVCO Corp.*, 815 F.Supp. 67, 71 (D. Conn.

10   1992); *see also Reiter's Beer Distrib., Inc. v. Christian Schmidt Brewing Co.*, 657 F.Supp. 136,

11   144-145 (E.D.N.Y. 1987) (finding such unrelated allegations prejudicial "by implication and

12   innuendo").  Hence, the allegations in defendants' counterclaim (¶ 2) regarding DuPont's alleged

13   environmental record and Exhibit F thereto should be stricken as impertinent and immaterial.

14   **III.**    **CONCLUSION**

15         For the foregoing reasons, and the reasons identified in its opening brief, DuPont

16   respectfully requests that the Court grant its motion to strike allegations regarding DuPont's

17   alleged anti-Chinese bias, DuPont's environmental record and Exhibit F to Defendants' Answer,

18   and that counsel be admonished to refrain from further such conduct as the case proceeds.

19         Dated: June 17, 2011         GLYNN & FINLEY, LLP

20                                   CLEMENT L. GLYNN
MORGAN K. LOPEZ

21                                   JONATHAN A. ELDREDGE
One Walnut Creek Center

22                                   100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596

23                                   MORRIS JAMES LLP

24                                   P. CLARKSON COLLINS, JR.
JASON C. JOWERS

25                                   500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

26                                   By /s/ Morgan K. Lopez
                                       Attorneys for Plaintiff

27

28   complaint, based on "rumor" alleging or implying that defendants intentionally caused
salmonella outbreak at dairy food supplier in order to deprive plaintiff drivers of their jobs.)