Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
On Lu, Esq. (Cal. Bar No. 242693)
MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax: (408) 998-1473
Email: dmount@mount.com; kpasquinelli@mount.com; onlu@mount.com

Counsel for USA PERFORMANCE TECHNOLOGY, INC., PERFORMANCE GROUP (USA), INC.;
and WALTER LIEW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>                    Plaintiff<br><br>vs.<br><br>USA PERFORMANCE TECHNOLOGY, INC., PERFORMANCE GROUP (USA), INC., WALTER LIEW, and JOHN LIU,<br><br>                    Defendants | Case No. 3:11-cv-01665 (MEJ)<br><br>**USA PERFORMANCE TECHNOLOGY, INC. and DR. WALTER LIEW'S SUBSTITUTED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

Defendants USA PERFORMANCE TECHNOLOGY, INC. ("USA-PTI"), a California corporation, and DR. WALTER LIEW, an individual (collectively "Defendants"), file this Answer to Plaintiff's Complaint, and admit, deny, and allege as follows.  Defendants do not answer on behalf of PERFORMANCE GROUP (USA), INC. ("Performance Group"), which filed for bankruptcy and is now dissolved.  Defendants do not answer on behalf of JOHN LIU, who is a separate and independent defendant.

## NATURE OF THE ACTION

1.      Defendants deny they have wrongfully obtained or possess any confidential, proprietary trade secret materials providing specifications for DuPont's chloride-route titanium dioxide ("TiO2") pigment manufacturing process.  Defendants admit that TiO2 is a white pigment used in materials ranging from paints to plastics to paper.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 1 and deny them on that basis.  If DuPont's allegation is true – that DuPont's sales of TiO2 pigments amounts to approximately one-fifth of all TiO2 pigment sales – then it also holds true that four-fifths (or 80%) of TiO2 pigments sales worldwide is *not* generated by DuPont.  The other 80% of TiO2 pigment is produced by DuPont competitors such as Cristal Global, Tronox Incorporated (formerly Kerr-McGee Corporation) , KRONOS Worldwide, Inc., Huntsman Pigments, and Ishihara Sangkyo Kaisha, Ltd., among many others.

2.      Defendants deny each and every allegation of paragraph 2.  DuPont shared its "superior process" with Sherwin-Williams in the late 1960's.  With DuPont's assistance, Sherwin-Williams built a TiO2 plant in Ashtabula, Ohio ("Ashtabula Plant").  Upon information and belief, the Ashtabula Plant implemented DuPont's proprietary techniques for producing TiO2 pigment.  In 1978, the Ashtabula Plant was offered for sale, and the facilities were opened to the public, and available for any DuPont competitor to come view.  Ownership of the Ashtabula Plant changed hands

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

at least twice, and is now in the possession of Cristal Global, the world's number two TiO2 producer – and DuPont's chief competitor.

3.      Defendants deny each and every allegation of paragraph 3.  Dr. Liew initiated independent development of the Chloride TiO2 process back in 1997.

## PARTIES, JURISDICTION, AND INTRADISTRIC ASSIGNMENT

4.      Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 4 and deny them on that basis.

5.      Defendants admit the allegations of paragraph 5.

6.      Defendants deny each and every allegation of paragraph 6.

7.      Defendants admit that Dr. Liew is the President of USA-PTI.  Defendants deny that Dr. Liew is a citizen of the People's Republic of China.  In fact, Dr. Liew is a citizen of the United States and resident of the State of California.  Dr. Liew has performed work for clients in China but has never held Chinese citizenship.  In fact, Dr. Liew was born in Malaysia.

8.      Defendants are without knowledge or information sufficient to admit or deny the allegations contained in the 1st sentence of paragraph 8 and deny them on that basis.  Defendants are informed and believe that John Liu holds a doctorate in engineering.  Defendants are informed and believe that John Liu recently resigned from Chevron to become an employee of USA-PTI.  Because of the harassment, stalking, and manipulative pressure exerted by DuPont on John Liu, he elected to forego employment with USA-PTI.

9.      Defendants admit the allegations of paragraph 9.

10.     Defendants admit the allegations of paragraph 10.

## FACTUAL BACKGROUND

## TiO2 PIGMENT AND ITS USES

11.     Defendants are informed and believe the allegations of paragraph 11 are correct.

12.     Defendants are informed and believe the allegations of paragraph 12 are correct.

13.     Defendants deny that there is a specific DuPont TiO2 process and that DuPont's "TiO2 pigment plays a critical role" in the products specified.  Defendants are informed and believe all other allegations of paragraph 13 are correct.

14.     Defendants are informed and believe the allegations of paragraph 14 are correct.

15.     Defendants are informed and believe the allegations of paragraph 15 are correct.

16.     Defendants are informed and believe the allegations of paragraph 16 are correct.

17.     Defendants are informed and believe that DuPont supplies TiO2 to the paper and paperboard industry.  Defendants deny that DuPont owns the chloride-route continuous process method of making TiO2.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 17 and deny them on that basis.

18.     Defendants are informed and believe the allegations of paragraph 18 are correct.

19.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 19 and deny them on that basis.

## DUPONT'S TiO2 CHLORIDE-ROUTE PROCESS

20.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 20 and deny them on that basis.

21.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 21 and deny them on that basis.

22.     Defendants admit the allegations of paragraph 22.

23.     Defendants admit that paragraph 23 purports to discuss DuPont's chloride-route process in general terms. Defendants deny that DuPont owns the described chloride-route process.   Defendants

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

admit that the general description does describe a chloride process of making titanium dioxide.

Defendants note that the chloride process described has been known in the industry for over 50 years.

24.     Defendants deny that DuPont owns the described chloride-route process or that there is a specific DuPont chloride-route process.  The chloride-route process used by every TiO2 producer uses the same process steps; DuPont's process has no uniqueness here.  Defendants admit the remaining allegations of paragraph 24.

25.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 25 and deny them on that basis.

26.     Defendants deny that DuPont "carefully safeguards its investment."  Upon information and belief, the 1968 version of DuPont's "superior process" was shared with a paint company, Sherwin-Williams at its Ashtablua Plant – which was then resold and changed hands several times to DuPont competitors (i.e. Smith Corona, SCM, Millenium Chemicals, Lyondell Chemical, and Cristal Global).  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 26 and deny them on that basis.

27.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 27 and deny them on that basis.

28.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 28 and deny them on that basis.

29.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 29 and deny them on that basis.

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

**DUPONT ESTABLISHES AND LATER EXPANDS TiO2
PIGMENT PLANT IN KUAN YIN, TAIWAN**

30.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 30 and deny them on that basis.  DuPont alleges that the Kuan Yin facility is "DuPont's newest and most modern TiO2 pigment manufacturing facility" but that facility was opened in approximately 1994.  Defendants are informed and believe that DuPont has not opened a new TiO2 plant in over 15 years.

31.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 31 and deny them on that basis.

32.     Defendants do not deny that DuPont's titanium technologies have been the subject of misappropriation by unidentified persons.  Further, Defendants do not deny that DuPont asserts that its alleged trade secrets have been lost because of misappropriation by others.  Defendants have never misappropriated any information from DuPont or any of its locations, whether the Kuan Yin facility or otherwise.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 32 and deny them on that basis.


**MISAPPROPRIATION OF DUPONT'S TiO2 PROCESS**

33.     Defendants are without knowledge or information sufficient to admit or deny whether DuPont received the anonymous letter described and deny this allegation on that basis.   Defendants deny each and every remaining allegation of paragraph 33.  USA-PTI had no incentive to sell DuPont's titanium technologies to USA-PTI's client in China because that client was already producing TiO2 using the chloride-route process.

34.     Defendants are informed and believe that John Liu had been, or may still be, an employee of Chevron.  Defendants admit that John Liu had been recruited to come work for USA PTI.  Defendants are informed and believe that John Liu's work at Chevron did not include working on TiO2,

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

and that he did not have access to any trade secrets on TiO2 at Chevron or any other companies as a result of his employment with Chevron.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 34 and deny them on that basis.

35.     Defendants admit that John Liu personally corresponded with Dr. Liew, in connection with his plans to come to work for USA-PTI.  Defendants are informed and believe that John Liu sent emails to and received emails from USA-PTI on his Chevron-issued laptop computer.  Defendants are further informed and believe that DuPont asked Chevron to share John Liu's personal emails that were found on John Liu's Chevron-issued laptop computer.  Defendants are informed and believe that Chevron took possession of the laptop computer used by John Liu and reviewed all of his personal emails.  Defendants deny each and every allegation of paragraph 35 not expressly admitted.

36.     Defendants have no personal knowledge as to where or how John Liu accessed the described documents.  USA-PTI admits, that as part of the interview process, it sent John Liu confidential and trade secret information of USA-PTI and its customers -- marked "Confidential" -- relating to TiO2 technology ("Confidential Documents").  The Confidential Documents, and the information and technology contained therein, were developed by USA-PTI in connection with the expansion of the plant for its customer in China. This information was confidential, developed over years at the expense of USA-PTI, and for the benefit of USA-PTI's customer who was expanding an existing chlorine-route titanium dioxide plant in China.  Defendants are informed and believe that Chevron shared with DuPont, USA-PTI's Confidential Documents.  Defendants are further informed and believed that *none* of the information given by Chevron to DuPont had DuPont's name anywhere on any of the documents.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 36 and deny them on that basis.

**DOCUMENTS IN LIU'S POSSESSION**

37.     Defendants cannot know what documents were found in the possession of John Liu. As such, Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 37 and on that basis deny these allegations. Defendants acknowledge that the Confidential Documents, sent to John Liu, reflect detailed knowledge of TiO2 processes.  However that information was developed by USA-PTI for customers in China, and that the information was never owned by or acquired from DuPont.  It is standard industry practice to mark proprietary and confidential documents with the owner's restrictive markings.  If the documents in John Liu's possession had been obtained from DuPont, they would have DuPont's restrictive markings on them.

38.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 38 and deny them on that basis.  Again, if the documents in John Liu's possession had been obtained from DuPont, they would have DuPont's restrictive markings on them. Defendants deny that DuPont owns the chloride-route process or that there is a specific DuPont chloride-route process.  The chloride-route process used by every TiO2 producer uses the same process steps. Four-fifths (or 80%) of TiO2 worldwide is *not* produced by DuPont.

39.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 39 and deny them on that basis.  Chlorine flows are a function of the plant capacity and the ore used.  The number of vaporizers is a function of the vaporizer size and the heat requirement.

40.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 40 and deny them on that basis.

41.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 41 and deny them on that basis.  The Confidential Documents include the equipment information that was conceptually sized and finalized by USA-PTI engineers. The

Confidential Documents also include a USA-PTI development of a chloride process was initiated in 1997 and represents a development effort of 14 years.  Defendants are informed and believe that Chevron shared these Confidential Information with DuPont.

42.     Defendants deny the allegation that the only way John Liu could obtain the details on the process flows to the aluminum chloride generator is from misappropriated confidential DuPont information.  The process flow to the aluminum chloride generator is based on the plant flow of the intermediate product.  There is nothing confidential here; a simple Google search using the key words "chloride process" will lead to a website maintained by Ti-Cons, a TiO2 consulting company based in Gladbach, Germany.   Ti-Cons makes public on their website, a PowerPoint presentation which contains comprehensive information on chloride process: http://www.ti-cons.com/Ti-Cons/index.php?option=com_content&view=article&id=9&Itemid=10&lang=en The process flows to the aluminum chloride generator – which DuPont alleges is it confidential trade secret – is clearly illustrated on slide 7.



(See Ti-Cons Chloride Process PowerPoint presentation, attached as *Exhibit A*.)  Furthermore, USA-PTI's client in China has been using an AlCl3 Generator for almost 20 years in their chloride route TiO2

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

Plant.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 42 and deny them on that basis.

43.     Defendants deny the allegation that the only way John Liu could obtain the details of the chlorine catch tank is from misappropriated confidential, proprietary DuPont materials.  Use of a chlorine tank is a common method of removing residual liquid from a superheated vapor stream.  Since this collected liquid must be re-vaporized, a tank heater is necessary, as opposed to a simple drip pocket used in steam systems.  Upon information and belief, a chlorine catch tank was installed in the abandoned Ashtabula Plant that was later opened for public inspection and sale.  Defendants also deny the allegation that The Chlorine Institute does not suggest the use of a chlorine tank – this is simply misinformation on DuPont's part.  The Chlorine Institute has published on its website, *Pamphlet 9: Chlorine Vaporizing Systems* – which specifically details how to design the vaporizer system with a knock-out pot, which is a catch tank.  (See Chlorine Institute *Pamphlet 9: Chlorine Vaporizing Systems*, attached as *Exhibit B*.)  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 43 and deny them on that basis.

44.     Defendants are without knowledge or information sufficient to admit or deny the allegations of paragraph 44 and deny them on that basis.  No chlorine unloading is a part of USA-PTI's design for its China client.

45.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 45 and deny them on that basis.  There is no comparison between the piping specifications used at DuPont's Kuan Yin plant and those used by USA-PTI's China client.  USA-PTI designed the pipe valve and insulation specifications for its China client.  Insulation was sized for a much lower ambient temperature than exists in Taiwan.  Further, pipe tracing is needed to prevent any condensation and is primarily electric – this is the normal practice in China.   Upon information and

Mount, Spelman & Fingerman, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

belief, pipe tracing was also implemented at the abandoned Ashtabula Plant that was opened for public inspection and sale.

46.     Defendants deny that bag filter technology and recycle gas temperature is non-public. Bag filter technology is provided by filter manufacturers.  Recycle gas temperature is a function of the bag filter media available at the time of purchase.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of paragraph 46 and deny them on that basis.

47.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 47 (including all of its sub-paragraphs) and deny them on that basis.

a.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 47(a) and deny them on that basis.  Micronizer capacity is based on a grinder designed by USA-PTI and built in China.  This prototype grinder is already in operation at a China TiO2 plant.

b.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 47(b) and deny them on that basis.  Fluid energy mills for TiO2 are commercially available, and the USA-PTI design is similar to what can be commercially purchased.

c.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 47(c) and deny them on that basis.  Purification treating agents containing fatty acids are certainly used outside of DuPont.  In fact, there are many publicly available literature and articles that describe the method of purification of titanium tetrachloride (TiCl4) using animal and vegetable oils -- fats which are different forms of fatty acids.  (See publicly available information pertaining to the purification of TiCl4 using fatty acids, collected as *Exhibit C*.)

d.   Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 47(d) and deny them on that basis.  Pressure transmitters are used in nearly all material transfer operations. Cementation is a well-known method of treating liquid wastes,

especially acidic wastes.  Public information on cementation can be found on articles, books, and patents. The general idea of cementation is to neutralize and solidify wastes with Portland cement as an alkaline and binding substance and lime as a neutralizing agent.  Sometimes, additional material such as fly ash, silicates, etc. is added to make different results of solids.  In fact, the cementation of process solids practiced by the DuPont Kuan Yin plant is publicly available on the internet.  (See publicly available information pertaining to DuPont's cementation method, collected as *Exhibit D*.)

48.     Defendants admit that USA-PTI sent to John Liu, the Confidential Documents, which included TiO2 process flow charts.  However, these Confidential Documents were developed by USA-PTI and were confidential, developed over years at the expense of USA-PTI, and for the benefit of USA-PTI's customer who was expanding an existing chlorine-route titanium dioxide plant in China.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 48 and deny them on that basis.

### DUPONT INTERVIEWS JOHN LIU AND HIS CO-WORKERS

49.     USA-PTI admits that USA-PTI expressed interest in hiring John Liu and two of his colleagues to come to work for USA-PTI so that USA-PTI could assist a client in China to expand its already existing TiO2 plant.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 49 and deny them on that basis.

50.     USA-PTI admits that Dr. Liew, on behalf of USA-PTI, approached John Liu concerning TiO2 process flow diagrams. Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 50 and deny them on that basis.

51.     USA-PTI admits that USA-PTI expressed interest in hiring, and did hire John Liu.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 51 and deny them on that basis.

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

52.     Defendants deny that Dr. Liew and John Liu conspired to provide misappropriated information to DuPont's competitor in China.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 52 and deny them on that basis.

## JOHN LIU JOINS WALTER LIEW AND USA-PTI

53.     Defendants admit that USA-PTI had offered to hire John Liu to work on the expansion of an existing TiO2 plant in China.  Defendants are informed and believe that John Liu tendered his resignation to Chevron.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 53 and deny them on that basis.

54.     Defendants admit that Dr. Liew, on behalf of USA PTI, traveled to China on two occasions in the past year to meet with USA-PTI's client that was interested in expanding its existing TiO2 plant.  Defendants admit that John Liu met Dr. Liew in China on at least one of these trips. Defendants deny that misappropriated DuPont's TiO2 process or that they marketed such information in China.  Defendants deny each and every allegation of paragraph 54 not expressly admitted.

55.     Defendants admit that Dr. Liew, on behalf of USA-PTI, and John Liu met with a representative of a company in China that manufactures titanium products.  Defendants admit that Dr, Liew has a relationship with the referenced Chinese company.  This Chinese company has long been manufacturing titanium products and had retained USA-PTI to expand its TiO2 plant.  Defendants deny each and every allegation of paragraph 55 not expressly admitted.

56.     Defendants deny each and every allegation of paragraph 56.  Upon information and belief, the following equipment described in the Complaint as DuPont's "proprietary information and trade secret" was actually part of the Ashtabula Plant's design which was opened to the public for touring and inspection when it was offered for sale in or about 1978:

a.   Chlorine catch tank

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

b.   Aluminum chloride generator

c.   Micronizers

d.   Electric-traced chlorine piping

e.   Animal fat purification

f.   Control valves in chlorine lines

g.   Multiple chlorine vaporizers

### DUPONT LACKS AN ADEQUATE REMEDY AT LAW

57.     Defendants are without knowledge or information sufficient to admit or deny whether DuPont has any adequate remedy and denies this allegation on that basis.  Defendants deny each and every remaining allegation of paragraph 57.

58.     Defendants deny each and every allegation of paragraph 58.   Upon information and belief, DuPont made available its "superior process" for the public to see in 1978.  Upon information and belief, DuPont's competitive edge in TiO2 production stems less from any "superior process" and more from the age of its plants and the experience of its operators.  Plant investment has escalated sharply in recent years giving older plants a significant return on their initial investment.

59.     Defendants deny each and every allegation of paragraph 59.

### COUNT 1
### MISAPPROPRIATION OF TRADE SECRET

60.     Defendants incorporate by reference all foregoing paragraphs as if set forth herein.

61.     Defendants deny that DuPont's process is superior to all comparable TiO2 pigment manufacturing processes in the world.  Defendants are without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 61 and deny them on that basis.

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

62.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 62 and deny them on that basis.

63.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 63 and deny them on that basis.

64.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 64 and deny them on that basis.

65.     Defendants deny each and every allegation of paragraph 65.

66.     Defendants are without knowledge or information sufficient to admit or deny the allegations contained in paragraph 66 and deny them on that basis.

67.     Defendants deny each and every allegation of paragraph 67.

68.     Defendants deny each and every allegation of paragraph 68.


## **AFFIRMATIVE DEFENSES**

Without altering the burden of proof, Defendants assert the following defenses.  Defendants assert such defenses based upon an investigation that is not complete and without the benefit of discovery necessary for the determination of their claims and defenses in this action.  Defendants' investigation of defenses is continuing, and Defendants reserve all affirmative defenses and any other defenses at law or in equity that may now exist or in the future be available based upon discovery or further investigation.  Defendants further reserve the right to amend this Answer should allegations be discovered demonstrating the existence of new or additional defenses or should a change in the law support the inclusion of new or additional defenses.

1.     DuPont has not provided its required CCP §2019.210 disclosure to Defendants.

2.     Defendants have independently developed USA-PTI's trade secrets, as defined under the UTSA.

3.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the applicable statutes of limitations.

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

4.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the doctrine of waiver.

5.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the doctrine of laches.

6.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the doctrine of estoppel.

7.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the doctrine of unclean hands.

8.     Upon information and belief, the Complaint, and each and every claim contained therein, is barred in whole or in part by the doctrine of unjust enrichment.

9.     Upon information and belief, the Complaint is frivolous, vexatious, and unreasonable, thereby entitling Defendants to recover attorney's fees and costs.

10.    Upon information and belief, Plaintiff has failed to mitigate damages, if any, and accordingly, are not entitled to the relief sought in the Complaint.

11.    Upon information and belief, the Complaint, and each cause of action thereof, is barred because of illegality, fraud, bad faith, and/or misrepresentation.

12.    Upon information and belief, the Complaint, and each cause of action thereof, is barred by doctrine of "failure to do equity" to the acts, conduct, and representations by and on behalf of Defendants.

13.    Defendants are entitled to setoffs if Plaintiff is awarded relief, but Defendants deny that Plaintiff is entitled to relief.

## COUNTERCLAIMS

## GENERAL ALLEGATIONS

Counterclaimant Defendant USA-PTI alleges as set forth below:

1.     DuPont has been trying to access the China market since 2005.  In March of that year, DuPont announced plans to build a 200,000 ton per year TiO2 plant at Dongying, Shangdon

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

1   Province, in the People's Republic of China.  Upon information and belief, DuPont, to this day, has

2   been unable to secure the necessary authorizations from the Chinese government to complete its

3   TiO2 plant.  Upon information and belief, the Chinese government's resistance to DuPont's proposed

4   Dongying plant is based upon the province's concern over groundwater and soil contamination –

5   similar to the disaster that happened at DuPont's Oakley site in Contra Costa County.  (See *Oakley*

6   *Community Exchange* article "Remediation is an important first step", published by DuPont in

7   Summer 2001, and attached as *Exhibit E.*)

8       2.      Upon information and belief, one of DuPont's chief motivations in pushing for a TiO2

9   plant in China is to bypass tougher environmental regulations it faces in the U.S.

10      3.      The delay of DuPont's China plant has left a vacuum for China-based producers of

11  TiO2 pigment.  To maintain its declining market share of the TiO2 industry, DuPont is attempting to

12  slow-down the efforts of potential competitors in China – including USA-PTI's China clients.

13  DuPont is also prying into the confidential information of USA-PTI, in an effort to forcefully extract

14  the trade secrets behind what it has been unable to do since 2005 – how to successfully build a TiO2

15  plant in China.

16      4.      USA-PTI is a design services and consulting company that specializes in high

17  technology and fine chemicals. USA-PTI has extensive hands-on experience in fine chemicals and

18  provides technical services in pigments, paints and coatings, polymers and copolymers, chlorinated

19  polymers, as well as others.

20      5.      USA-PTI fine chemical customers generally manufacture pigments, paints and

21  polymers. These customers are located both in the United States, and in the Far East, such as China.

22      6.      While delivering services for its customers, USA-PTI comes into the possession of

23  many of its customers' trade secrets, as well as developing its own trade secrets ("USA-PTI Trade

24  Secrets").

25      7.      Many of USA-PTI's clients directly compete with DuPont. As such, the trade secrets

26  in the possession of USA-PTI, and developed by USA-PTI, are of particular value to companies such

27  as DuPont.

28

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

8. USA-PTI's Trade Secrets are valuable to USA-PTI because they are not generally known to its competitors, or its customer's competitors, and are not readily available to the public. USA-PTI derives substantial economic value from its USA-PTI Trade Secrets not being generally known to the public or its competitors, who could obtain economic value from their unauthorized disclosure or use.

9. USA-PTI has at all times taken reasonable and appropriate measures to protect its Trade Secrets. For example, all USA-PTI employees, consultants and contractors are required to sign a Non-Disclosure agreement; access to USA-PTI offices are restricted; all visitors must sign into and out-of a log and be escorted by a USA-PTI employee; and all doors are under lock and key. Electronically stored information, including but not limited to, project plans, project schedules, customer requirement documents and communications, and design documents are protected on the computer system and only authorized users can access them. Confidential documents sent to third parties are customarily marked "Confidential" or "USA-PTI Confidential".

10. USA-PTI is under contract to expand the capacity of titanium dioxide (TiO2) plant for a client in China.  This client currently operates two production lines, and USA-PTI has been retained to add a third.  Dr. Liew has been active in the design development for this venture since 2003.

11. To complete the implementation of this design, USA-PTI sought a project engineering manager who has the experience of starting up a production plant.  USA-PTI discussed potential employment with John Liu for this role.  John Liu has many years of experience in the design engineering of chemical related industries.  He also has the experience of management in project engineering, as well as starting-up of production plants.  In addition to his technical capabilities, John Liu is also proficient in English and Chinese – an important skill needed by USA-PTI to communicate between the U.S. engineering team and the China-based client.

12. As part of the interview process, and in strict confidence, USA-PTI sent John Liu very specific project specifications pertaining to the expansion of a China-based TiO2 manufacturing plant ("Confidential Documents").  The Confidential Documents also contained design details of the plant – including process calculations and specifications – which had taken many years of USA-PTI

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

development and engineering effort.

13.     These Confidential Documents shared with John Liu were marked "Confidential", or the equivalent.  John Liu was asked to, and did, sign a non-disclosure agreement. John Liu was asked to review the Confidential Documents and comment on how the designs could be improved. It was understood at all times that John Liu did not research, develop, or manufacture TiO2 for his employer, Chevron, and so USA-PTI in no way requested John Liu to use or divulge any trade secrets or confidential information belonging to Chevron.

14.     Shortly after this exchange, DuPont alleged that it received an anonymous letter accusing the Defendants of misappropriating DuPont trade secrets (Complaint ¶33).

15.     In response, DuPont contacted John Liu's employer, Chevron, in search of the Confidential Documents (Complaint ¶34).  DuPont asserts that Chevron confirmed that John Liu had corresponded with USA-PTI using Chevron's computers, and that those computers contained the Confidential Documents (Complaint ¶35). Chevron subsequently copied and shared the Confidential Documents with DuPont (Complaint ¶36).  USA-PTI is informed and believes that the Confidential Documents were first copied and shared with DuPont's outside counsel, who then copied and shared the Confidential Documents with DuPont's in-house counsel, engineers, and other employees who made additional copies of the Confidential Documents.

16.     DuPont admits that its own engineers "examined these [Confidential] documents" (Complaint ¶48, ¶38) despite the fact that the Confidential Documents are "not identified as DuPont information" (Complaint ¶38) and not labeled "DuPont" (Complaint ¶47).  As such, DuPont is now in the possession of and has used the Trade Secrets of USA-PTI and its customers.

17.     Neither DuPont, nor DuPont on behalf of its agents, state in the Complaint that it, or its agents, took reasonable efforts to protect USA-PTI's Trade Secrets and Confidential Documents.

18.     On or about March 30, 2011, and without good cause or explanation, John Liu and his wife, also an employee of Chevron, were suspended from their employment at Chevron.

19.     DuPont knew of the employment relationship between USA-PTI and John Liu (Complaint ¶53) and intentionally acted to disrupt that relationship.  James T. Jubb, an Executive

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

1    Security Officer from DuPont, followed John Liu to his house after he was suspended from Chevron.

2    Mr. Jubb entered John Liu's house to interrogate and harassed him about his relationship with Dr.

3    Liew and USA-PTI.

4        20.    Mr. Jubb has identified and followed several other USA-PTI employees.  In particular,

5    Mr. Jubb went to the home of the father of USA-PTI employee Allen Chang on April 5, April 12, and

6    April 14, 2011.  Mr. Jubb attempted to force the father to reveal the whereabouts of Allen Chang.

7    Upon information and belief, Mr. Jubb has also followed Dr. Liew and his family.  In one instance in

8    particular, Dr. Liew's wife noted that a man was riffling through the garbage containers in front of

9    the Liew family's house.

10       21.    Because of the harassment, stalking, and manipulative pressure exerted by DuPont on

11   John Liu, he elected to forego employment with USA-PTI.

12

13                          **PARTIES AND JURISDICTION**

14       22.    Counterclaimant Defendant USA-PTI is a California corporation with its principal

15   place of business at 1000 Broadway Suite 480, Oakland, California 94607.

16       23.    Plaintiff/Counter Defendant DuPont is a Delaware Corporation that maintains its

17   headquarters in Wilmington, Delaware, and is in the business of research, development, and

18   manufacture of chemicals and other substances.

19       24.    Plaintiff/Counter Defendant DuPont alleges that Defendants misappropriated DuPont

20   Confidential and Proprietary Information and Trade Secrets.

21       25.    The Court has subject matter jurisdiction over these claims as supplemental pursuant

22   to 28 U.S.C. §1367(a), 28 U.S.C. §1331 (Federal Question), and 28 U.S.C. §1332 (based on Diversity

23   of Citizenship). Complete diversity exists, and the amount in controversy exceeds $75,000 exclusive

24   of interests and costs.

25       26.    Venue is proper in this judicial district pursuant to 28 U.S.C. 1391.

26

27                          **FIRST COUNTERCLAIM**
     **DECLARATORY RELIEF AS TO MISAPPROPRIATION OF TRADE SECRET**
28

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

1

2       27.     Counterclaimant Defendant USA-PTI realleges and incorporates by reference, all

3  previous allegations of this Answer and Counterclaim.

4       28.     DuPont has charged USA-PTI with misappropriation of DuPont's trade secrets. USA-

5  PTI deny that it has misappropriated any DuPont trade secrets.

6       29.     As a result of DuPont's allegations, an actual controversy has arisen and now exists

7  between DuPont and USA-PTI with respect to DuPont's alleged trade secrets.

8       30.     Accordingly, USA-PTI seeks declarations that:

9             a.    DuPont has not taken reasonable efforts under the circumstances to preserve the

10                  confidentiality of its alleged trade secrets.

11            b.    DuPont does not derive economic value from its alleged trade secrets for not

12                  being generally known;

13            c.    USA-PTI has not acquired DuPont's alleged trade secrets by improper means

14                  or misappropriation under the California Uniform Trade Secrets Act ("UTSA");

15            d.    USA-PTI is not presently using DuPont's alleged trade secrets;

16            e.    USA-PTI has not misappropriated or threatened to misappropriate, has not used

17                  or threatened to use, nor disclosed nor threatened to disclose DuPont's alleged

18                  trade secrets;

19            f.    USA-PTI has not caused irreparable harm to DuPont;

20            g.    USA-PTI has not wrongfully acquired gains based on DuPont's alleged trade

21                  secrets, and do not hold any gains in constructive trust;

22            h.    Any loss of revenues from sales of its products and services suffered by DuPont

23                  is not due to USA-PTI's misappropriation of alleged DuPont trade secrets; *and*

24            i.    DuPont is not entitled to exemplary or punitive damages.

25

26                              **SECOND COUNTERCLAIM**
                 **DUPONT'S MISAPPROPRIATION OF USA-PTI'S TRADE SECRETS**
27                        **(California Civil Code §3426 et seq.)**

28

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

31.     USA-PTI incorporates by reference the foregoing paragraphs as if set forth herein.

32.     USA-PTI's Trade Secrets, as described herein, are trade secrets as defined by the California Uniform Trade Secrets Act, California Civil Code Section 3426 *et seq.* (the "UTSA"). USA-PTI has taken reasonable efforts under the circumstances to preserve the confidentiality of its trade secrets, and this information derives economic value from not being generally known. ("USA-PTI Trade Secrets").

33.     DuPont has acquired, or induced others to acquire, and used USA-PTI Trade Secret information by improper means, including without limitation, inducing others to breach a duty to maintain secrecy or limit use. Such acts constitute misappropriation under the UTSA.

34.     DuPont has misappropriated, or induced others to misappropriate, USA-PTI's Trade Secrets as described herein, and is presently using USA-PTI's Trade Secrets in connection with its own business activities, not on behalf of USA-PTI, without USA-PTI's express or implied consent, authorization, or authority. Such acts constitute misappropriation of USA-PTI's Trade Secrets under the UTSA.

35.     DuPont has either misappropriated or threatened to misappropriate, has either used or threatened to use, and have either disclosed or threatened to disclose USA-PTI's Trade Secrets, or induced others to do the same.

36.     The conduct of DuPont has caused, and will continue to cause, irreparable harm to USA-PTI. Unless and until enjoined, defendants will continue to receive the benefit of the Trade Secrets misappropriated from USA-PTI, which have aided and will continue to aid DuPont to compete unfairly against USA-PTI and its customers. Moreover, DuPont will continue to expand its business, and disclose USA-PTI's Trade Secrets to third parties. USA-PTI will forever lose the value of its significant investment of time and money in its Trade Secrets. USA-PTI's competitive position, based upon its valuable knowledge, access to and use of its Trade Secrets, will be irretrievably lost. Further, DuPont will be unjustly enriched in an amount that is separate and distinct from USA-PTI's damages.

37.     USA-PTI alleges that DuPont has wrongfully acquired gains resulting from the

Mount, Spelman & Fingerman, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

conduct described in this Counter-Complaint, and accepted such gains with the knowledge that the gains came from such conduct. Thus, DuPont holds wrongfully acquired gains in constructive trust for the benefit of USA-PTI, and USA-PTI is entitled to an accounting of those gains.

38.     As a proximate result of the actual and threatened misappropriation of USA-PTI's Trade Secrets by DuPont, USA-PTI has been damaged in that DuPont has and will continue to receive the benefits of the Trade Secrets, which have aided and continue to aid defendants to compete unfairly against USA-PTI, and USA-PTI will suffer the loss of revenues from sale of its services. USA-PTI is entitled to actual damages or royalties.

39.     USA-PTI alleges that in misappropriating USA-PTI's Trade Secrets, and engaging in the willful and malicious conduct and omissions alleged herein, DuPont is guilty of oppression, fraud and malice. USA-PTI is therefore entitled to exemplary or punitive damages and attorneys' fees.

### THIRD COUNTER CLAIM
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. §501)

40.     USA-PTI incorporates by reference the foregoing paragraphs as if set forth herein.

41.     USA-PTI's Confidential Documents are an original work of authorship and constitute copyrightable subject matter.

42.     USA-PTI is the owner, creator, and copyright holder in the Confidential Documents.

43.     USA-PTI is, and at all relevant times has been, the copyright owners of rights with respect to the Confidential Documents and has never assigned, licensed or otherwise transferred the copyrights to DuPont, or any of its agents, or dedicated them to the public.

44.     USA-PTI has not executed any document effecting transfer of rights to DuPont, or its agents.

45.     DuPont, and its agents, have without permission or authority, reproduced, distributed, and displayed, USA-PTI's copyrighted Confidential Documents for its own benefit and use.

46.     DuPont has, without permission or authority, indirectly influenced others or contributed to or induced others to reproduce, distribute, and display USA-PTI's copyrighted

Confidential Documents for its own benefit and use.

47.     DuPont has knowingly and intentionally reproduced, distributed, and displayed USA-PTI's copyrighted Confidential Documents in furtherance of their business and in knowing disregard of USA-PTI's rights.

### FOURTH COUNTER CLAIM
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

48.     USA-PTI incorporates by reference the foregoing paragraphs as if set forth herein.

49.     An economic relationship existed between USA-PTI and John Liu upon the offer of employment. This relationship contained future economic benefit to both parties; employment for John Liu with USA-PTI, and delivery of additional services, thereby profits for USA-PTI.

50.     DuPont knew of the employment relationship between USA-PTI and John Liu (Complaint ¶53).

51.     DuPont intentionally acted to disrupt the employment relationship between USA-PTI and John Liu by interrogating and harassing him after he had already submitted his resignation at Chevron and agreed to join USA-PTI (Complaint ¶¶49-55); and by inducing Chevron to suspend John Liu and his wife frm their employment at Chevron.

52.     The relationship was disrupted. John Liu accepted the offer of employment from USA-PTI, tendered resignation to Chevron, was then interrogated and harassed by DuPont, and thereafter withdrew his acceptance of employment with USA-PTI.

53.     USA-PTI has suffered damaged in an amount to be determined at trial due to the loss of John Liu's services.

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Defendant USA-PTI prays for a judgment ordering that:

1. **DECLARATORY RELIEF:**

   a. DuPont has not taken reasonable efforts under the circumstances to preserve the confidentiality of its alleged trade secrets;

   b. DuPont does not derive economic value from its alleged trade secrets for not being generally known;

   c. USA-PTI has not acquired DuPont's alleged trade secrets by improper means or misappropriation under the California Uniform Trade Secrets Act;

   d. USA-PTI is not presently using DuPont's alleged trade secrets;

   e. USA-PTI has not misappropriated or threatened to misappropriate, have not used or threatened to use, nor disclosed nor threatened to disclose DuPont's alleged trade secrets;

   f. USA-PTI has not caused irreparable harm to DuPont;

   g. USA-PTI has not wrongfully acquired gains based on DuPont's alleged trade secrets, and do not hold any gains in constructive trust;

   h. Any loss of revenues from sales of its products and services suffered by DuPont is not due to USA-PTI's misappropriation of alleged DuPont alleged trade secrets; *and*

   i. DuPont is not entitled to exemplary or punitive damages.

2. **TRADE SECRET MISAPPROPRIATION**

   a. For a preliminary and permanent injunction requiring that DuPont, and any person acting in concert with DuPont, return all misappropriated USA-PTI confidential and Trade Secret information.

b.   For a preliminary and permanent injunction preventing DuPont, and any persons acting in concert with DuPont, from making any further actual or threatened release of any USA-PTI confidential and Trade Secret information.

c.   For a preliminary and permanent injunction barring DuPont, and any persons acting in concert with DuPont from using any USA-PTI Trade Secrets relating to TiO2.

d.   For damages arising from DuPont's misappropriation of USA-PTI Trade Secrets.

e.   For exemplary damages for DuPont's willful and malicious misappropriation of USA-PTI Trade Secrets.

f.   For attorneys' fees and costs incurred by USA-PTI in this action.

3.   **COPYRIGHT INFRINGEMENT**

a.   For a declaration that DuPont infringed USA-PTI's copyrights in the Confidential Documents.

b.   DuPont be ordered to account for and pay to USA-PTI, damages suffered by USA-PTI as a result of DuPont's unlawful acts.

c.   DuPont be ordered to account for and pay to USA-PTI, all profits realized by DuPont as a result of DuPont's unlawful acts.

d.   DuPont's acts were willful, wanton, malicious, and oppressive , and justify the awarding of exemplary and punitive damages to USA-PTI.

e.   The Court declare this an exceptional case and award USA-PTI recovery of attorney fees.

f.   Preliminary and permanent injunctive relief from using, duplicating, reproducing or displaying the Confidential Documents for its own benefit and use.

4.   **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

a.  For a declaration that DuPont interfered with the employment relationship between USA-PTI and John Liu.

b.  DuPont be ordered to pay to USA-PTI, all profits that would have been realized by USA-PTI had John Liu delivered services as an employee of USA-PTI.

c.  DuPont's acts were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages to USA-PTI.

5.  **GENERAL**

a.  For such other relief as the Court may deem just and proper.

Date: July 11, 2011

MOUNT, SPELMAN & FINGERMAN, P.C.

Daniel S. Mount, Esq.
Kevin M. Pasquinelli, Esq.
On Lu, Esq.

Counsel for USA PERFORMANCE TECHNOLOGY, INC. and DR. WALTER LIEW

MOUNT, SPELMAN & FINGERMAN, P.C.
Riverpark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000