1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   MORGAN K. LOPEZ, Bar No. 215513
    JONATHAN A. ELDREDGE, Bar No. 238559
3   One Walnut Creek Center
    100 Pringle Avenue, Suite 500
4   Walnut Creek, CA 94596
    Telephone: (925) 210-2800
5   Facsimile: (925) 945-1975

6   MORRIS JAMES LLP
    P. Clarkson Collins, Jr., *Pro Hac Vice Pending*
7   Jason C. Jowers, *Pro Hac Vice Pending*
8   500 Delaware Avenue, Suite 1500
    Wilmington, Delaware  19801
9   Telephone:  (302) 888-6800
    Facsimile:  (302) 571-1750
10  E-mail:  pcollins@morrisjames.com
11          jjowers@morrisjames.com

12  Attorneys for E. I. du Pont de Nemours and Company

13

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16
                                    )    **Case No. 3:11-cv-01665-JSW**
17  E. I. DU PONT DE NEMOURS AND     )
    COMPANY,                         )    **JOINT CASE MANAGEMENT**
18                                   )    **STATEMENT**
                                     )
19              Plaintiff,           )
                                     )
20       v.                          )    Date:    July 22, 2011
                                     )    Time:    1:30 p.m.
21  USA PERFORMANCE TECHNOLOGY,      )    Place:   Courtroom 11
    INC., PERFORMANCE GROUP (USA),   )    Judge:   Hon. Jeffrey S. White
22  INC., WALTER LIEW, and JOHN LIU, )
                                     )
23              Defendants.          )
24  _____ )

25

26       Pursuant to the Court's April 22, 2011, Order Setting Case Management Conference and

27  Requiring Joint Case Management Statement (Docket No. 18), Plaintiff E.I. du Pontde Nemours

28  and Company ("DuPont") and defendants Walter Liew ("Liew") and USA Performance

                                    - 1 -

1   Technology, Inc.("USA PTI") (collectively "Defendants") submit this Joint Case Management

2   Statement.

3       1.      **Jurisdictional Issues and Service**

4           This Court has subject matter jurisdiction over DuPont's claims pursuant to 28 U.S.C. §

5   1332 because complete diversity exists and the amount in controversy exceeds $75,000

6   exclusive of interest and costs.  The Court has subject matter jurisdiction over Defendants'

7   counter-claims as supplemental pursuant to 28 U.S.C. §1367(a), 28 U.S.C. §1331 (Federal

8   Question), and 28 U.S.C. §1332 (based on Diversity).  Complete diversity exists, and the amount

9   in controversy exceeds $75,000 exclusive of interests and costs.

10          All parties to this action have been served.  Defendant John Liu, however, has not

11  appeared in this action pursuant to an agreement with DuPont.  DuPont proposes a deadline of

12  August 22, 2011, by which Mr. Liu will appear.

13      2.      **Facts**

14      DuPont's Position

15          On April 6, 2011, DuPont filed this action alleging that Defendants and others have

16  wrongfully obtained and possess confidential, proprietary, trade secret materials providing

17  detailed specifications for DuPont's chloride-route titanium dioxide ("TiO$_2$") pigment

18  manufacturing process.  TiO$_2$ is a white pigment used in materials ranging from paints to plastics

19  to paper.  Because of its wide ranging applications, global sales of TiO$_2$ pigment annually exceed

20  an estimated 5 million tons.  DuPont's sales of TiO$_2$ pigment amount to approximately one-fifth

21  of all TiO$_2$ pigment sales, which makes DuPont the world's largest producer of TiO$_2$ pigment.

22  DuPont's chloride-route manufacturing process has a variety of advantages over the sulfate-route

23  process used by more conventional manufacturers.  For example, the chloride-route process is a

24  continuous process, while the sulfate-route process is a batch process.  Additionally, it is a

25  cleaner process that produces substantially less waste than the sulfate-route process.  Finally, the

26  chloride-route process produces TiO$_2$ pigment in the rutile crystalline form, which is the

27  preferred form.  The sulfate-route process inherently produces the anatase crystalline form,

28  which requires additional processing to convert to a rutile crystalline form.

- 2 -

1    In August 2010, DuPont received an anonymous letter indicating that a Walter
2 Liew of USA PTI and John Liu had embezzled $TiO_2$ pigment technologies from DuPont.  The
3 anonymous letter also stated that Liew, Liu, and USA PTI had then sold the technologies to a
4 company in China.  Documents obtained from Mr. Liu's employer and interviews conducted by
5 DuPont substantiated the information provided in the anonymous letter.  Furthermore, recent
6 press releases from Chinese $TiO_2$ manufacturers reveal that they have been working with
7 Defendants to increase their $TiO_2$ production capabilities.

8    Accordingly the principal factual issues in dispute are whether Defendants
9 misappropriated DuPont's $TiO_2$ trade secrets, and if so, the extent of their activities and the
10 resulting harm.

11   Defendants' Position

12   On May 11, 2011, Defendants answered, denying that they misappropriated any trade
13 secrets, and counterclaimed against DuPont charging Du Pont, and its agents, with
14 misappropriating USA PTI's trade secrets, with infringing USA PTI's Copyright, and tortious
15 interference with prospective economic advantage. Defendants also requested declaratory relief
16 that Defendants have not misappropriated any DuPont trade secrets.

17   There can be and are certain trade secrets in connection with the design and performance
18 of TIO2 plants.  Contrary to Du Pont's pleadings, Du Pont does not own the chloride route
19 manufacturing process.  This manufacturing process has been known for decades and has been
20 employed by many companies.

21   Defendants deny the trade secret status for the vague concepts asserted in Du Pont's
22 Complaint.  In its answer Defendant refers to many sources that disclose the public availability
23 of many of the TIO2 processes used by Du Pont.

24   Even if Du Pont is able to successfully articulate a cognizable trade secret, Defendants
25 deny any misappropriation of any information from Du Pont.

26   Du Pont has not asserted how Defendants have (or even could have) gained access to Du
27 Pont's trade secrets.  Moreover, in their complaint Du Pont acknowledges that the information
28 they obtained concerning the processes adopted by USA PTI's engineering team, do not reveal

JOINT CASE MANAGEMENT STATEMENT

1    any connection to any Du Pont confidential information or sources.

2          In connection with recruiting additional employees for USA PTI's engineering team,

3    USA PTI interviewed certain qualified engineers employed by Chevron.  In connection with that

4    effort USA PTI shared confidential information with these prospective employees.  (These

5    prospective employees understood that the information we were sharing was confidential.)

6    Indeed some of the material shared with these Chevron employees, prospective USA PTI's

7    employees, were marked "confidential" clearly on their face.  It was obvious to them and to

8    everyone concerned that the material was confidential.

9          Despite this confidential status and obvious designation, Du Pont obtained access to this

10   confidential information by reason of its business relationship with Chevron.  DuPont obtained

11   cooperation from Chevron and Chevron transferred of these confidential documents.

12         Pursuant to agreements between Du Pont and Chevron, Du Pont was given access to

13   Defendants' confidential information including the design plans for the Defendants' customers

14   who were planning to expand their plant.  The materials were obviously confidential, some were

15   so marked and they were taken by Du Pont and shared with Du Pont internal engineers who have

16   now gained access to the designs that were independently developed by Defendant USA PTI.

17   Through interviews with third parties DuPont accessed Defendants confidential documents and

18   trade secrets. Rather than hold these documents with a neutral third party until their contents

19   were better understood, DuPont engineers "examined these [confidential] documents"

20   (Complaint ¶48, ¶38) despite the fact that the Confidential Documents were "not identified as

21   DuPont information" (Complaint ¶38) and not labeled "DuPont" (Complaint ¶47).  As such,

22   DuPont is now in the possession of and has used the Trade Secrets of USA-PTI and its

23   customers. DuPont has also made unauthorized copies of the confidential documents.

24         DuPont knew of the employment relationship between USA-PTI and John Liu

25   (Complaint ¶53) and intentionally acted to disrupt that relationship.  It harassed John Liu and

26   John's wife. In conversations with and/or agreements with Chevron, DuPont suggested, urged or

27   otherwise encouraged Chevron to suspend John's wife from employment. Also, DuPont urged or

28   persuaded Chevron to press John Liu to leave the building of his Chevron employer in a way to

JOINT CASE MANAGEMENT STATEMENT

1   cast him in a light as a thief of Chevron trade secrets DuPont caused Chevron to take steps to

2   intimidate Mr. Liu and his wife.

3       Accordingly the principal facts in dispute are (1) discovery of Du Pont's trade secrets, if

4   any, (2) how USA PTI gained any access to or used any of these alleged trade secrets, (3)

5   whether Du Pont took precautions to protect the trade secrets of USA PTI that it misappropriated

6   via its cooperation with Chevron, (4) how Du Pont used the trade secrets of USA PTI to its

7   advantage, (5) whether Du Pont directly or through its agents disrupted the employment

8   relationship between USA PTI and Mr. Liu, and (6) whether the acts were willful and malicious

9       **3.**    **Legal Issues**

10     DuPont's Position

11       With respect to DuPont's misappropriation claim, the legal issues in dispute are: 1)

12   whether the DuPont technology is proprietary and confidential; and 2) whether Defendants have

13   misappropriated DuPont's trade secrets;

14     Defendants' Position

15       With respect to Defendants' claims, the legal issues in dispute are: (1) whether DuPont's

16   appropriation and analysis of USA PTI's confidential documents constitute a trade secret

17   misappropriation, (2) whether DuPont's copying of USA PTI's confidential documents is a

18   violation of the its Copyright, and (3) whether DuPont's copying is a violation of the copyright

19   interviews with and investigations of Mr. Liu constitute interference with USA PTI's economic

20   advantage.

21       **4.**    **Motions**

22       On May 26, 2011, DuPont filed a motion to strike certain statements in Defendants'

23   Answer and Cross-Complaint and an exhibit thereto.  The Court's June 27, 2011 Order granted

24   in part and denied in part DuPont's motion.  There are no motions currently pending at this time.

25   DuPont anticipates that it will file a motion for a preliminary injunction once it has completed its

26   investigation of certain factual matters.

27       Defendants anticipate moving for summary judgment that Defendants have

28   misappropriated no trade secrets and that Defendants have never accessed any DuPont trade

1   secrets.  Defendants further anticipate moving for a preliminary injunction prohibiting DuPont

2   from further copying and using of Defendant's confidential documents containing its trade

3   secrets.

4       **5.       <u>Amendment of Pleadings</u>**

5           On July 8, 2011, Defendants filed a Substituted Answer and Counterclaims to conform its

6   pleading to the Court's Order on DuPont's motion to strike.  DuPont's response to this pleading

7   is due July 29, 2011.  Neither DuPont nor Defendants anticipate amending their pleadings further

8   at this time. Although it is possible that DuPont will name additional co-conspirators. It is

9   possible that Defendants will name additional parties who have worked in concert with DuPont

10  in connection with Du Pont's collection use of USA PTI's trade secrets.

11      **6.       <u>Evidence Preservation</u>**

12          <u>DuPont's Position</u>

13          To preserve evidence relevant to the issues reasonably evident in this action, DuPont has

14  issued a comprehensive hold order to suspend routine records destruction.  Pursuant to this order,

15  DuPont suspended the destruction of all documents dating from 1990 to the present, and

16  ongoing, relating to categories of documents relevant to this lawsuit.

17          <u>Defendants' Position</u>

18  Defendants will retain copies of emails and other documents that are potentially relevant to

19  issues reasonably evident in this action. Defendants will preserve documents, including

20  electronic documents, that appear to be relevant to the issues reasonably evident to the parties'

21  claims and defenses.

22      **7.       <u>Disclosures</u>**

23          Pursuant to a stipulation and proposed order filed July 12, 2011, the parties have agreed

24  to stay Rule 26 initial disclosure obligations until August 12, 2011, assuming all outstanding

25  issues regarding compliance with California Code of Civil Procedures section 2019.210 have

26  been resolved and the scope of the protective order governing treatment of documents produced

27  in this action have been resolved.  If these issues have not been resolved by that date, the parties

28

JOINT CASE MANAGEMENT STATEMENT

1  will seek guidance from the Court.  The Court granted the parties' proposed order on July 12,

2  2011.

3       Defendants believe that compliance with CCP 2019.210 is required in this suit.

4      **8.**    **<u>Discovery</u>**

5       Discovery has not commenced.  The parties have agreed to a 30-day moratorium on

6  discovery during which time they will discuss the 2019.210 statements and negotiate an

7  appropriate protective order.  Once these issues have been resolved, the parties anticipate

8  propounding written discovery and conducting depositions of fact witnesses.

9      **9.**    **<u>Class Actions</u>**

10      Not applicable.

11      **10.**    **<u>Related Cases</u>**

12      The parties are not aware of any related cases.

13      **11.**    **<u>Relief</u>**

14      <u>DuPont's Position</u>

15       DuPont seeks the following relief:  a) a preliminary and permanent injunction requiring

16  that Defendants, and any persons acting in concert with Defendants, return all misappropriated

17  confidential or trade secret information; b) a preliminary and permanent injunction preventing

18  Defendants, and any persons acting in concert with Defendants, from making any further actual

19  or threatened release of any DuPont confidential or trade secret information; c) a preliminary and

20  permanent injunction barring Defendants and any persons acting in concert with Defendants

21  from using any DuPont trade secrets relating to its TiO2 process;    d) a preliminary and

22  permanent injunction barring Defendants from working in, consulting for or working with the

23  TiO2 chloride process manufacturing industry; e) damages arising from the misappropriation of

24  its trade secrets; f) damages for the willful and malicious misappropriation of its trade secrets; g)

25  attorneys' fees and costs incurred by DuPont in this action.

26      Defendants deny that they have violated any law or misappropriated any trade secret.

27      <u>Defendants' Position</u>

28      Defendants seek the following relief:

1.  **Declaratory Relief that:**

    a.  DuPont has not taken reasonable efforts under the circumstances to preserve the confidentiality of its alleged trade secrets;

    b.  DuPont does not derive economic value from its alleged trade secrets for not being generally known;

    c.  USA-PTI has not acquired DuPont's alleged trade secrets by improper means or misappropriation under the California Uniform Trade Secrets Act;

    d.  USA-PTI is not presently using DuPont's alleged trade secrets;

    e.  USA-PTI has not misappropriated or threatened to misappropriate, have not used or threatened to use, nor disclosed nor threatened to disclose DuPont's alleged trade secrets;

    f.  USA-PTI has not caused irreparable harm to DuPont;

    g.  USA-PTI has not wrongfully acquired gains based on DuPont's alleged trade secrets, and do not hold any gains in constructive trust;

    h.  Any loss of revenues from sales of its products and services suffered by DuPont is not due to USA-PTI's misappropriation of alleged DuPont alleged trade secrets; *and*

    i.  DuPont is not entitled to exemplary or punitive damages.

2.  **Trade Secret Misappropriation**

    a.  For a preliminary and permanent injunction requiring that DuPont, and any person acting in concert with DuPont, return all misappropriated USA-PTI confidential and Trade Secret information.

    b.  For a preliminary and permanent injunction preventing DuPont, and any persons acting in concert with DuPont, from making any further actual or threatened release of any USA-PTI confidential and Trade Secret information.

/ / /

/ / /

JOINT CASE MANAGEMENT STATEMENT

c.  For a preliminary and permanent injunction barring DuPont, and any persons acting in concert with DuPont from using any USA-PTI Trade Secrets relating to TiO2.

d.  For damages arising from DuPont's misappropriation of USA-PTI Trade Secrets.

e.  For exemplary damages for DuPont's willful and malicious misappropriation of USA-PTI Trade Secrets.

f.  For attorneys' fees and costs incurred by USA-PTI in this action.

3.  **Copyright Infringement**

a.  For a declaration that DuPont infringed USA-PTI's copyrights in the Confidential Documents.

b.  DuPont be ordered to account for and pay to USA-PTI, damages suffered by USA-PTI as a result of DuPont's unlawful acts.

c.  DuPont be ordered to account for and pay to USA-PTI, all profits realized by DuPont as a result of DuPont's unlawful acts.

d.  DuPont's acts were willful, wanton, malicious, and oppressive , and justify the awarding of exemplary and punitive damages to USA-PTI.

e.  The Court declare this an exceptional case and award USA-PTI recovery of attorney fees.

f.  Preliminary and permanent injunctive relief from using, duplicating, reproducing or displaying the Confidential Documents for its own benefit and use.

4.  **Tortious Interference with Prospective Economic Advantage**

a.  For a declaration that DuPont interfered with the employment relationship between USA-PTI and John Liu.

b.  DuPont be ordered to pay to USA-PTI, all profits that would have been realized by USA-PTI had John Liu delivered services as an employee of USA-PTI.

c.  DuPont's acts were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages to USA-PTI.

JOINT CASE MANAGEMENT STATEMENT

1  DuPont denies that it has violated any law or misappropriated any trade secrets and that

2  the assertion of such claims in inconsistent with Rule 11.

3        12.    **Settlement and ADR**

4  The parties believe that ADR would be premature until some discovery occurs.  During

5  their Rule 26(f) conference, the parties agreed to early neutral evaluation 120 days from entry of

6  the Court's Order referring the parties to ADR.  The Court's Order referring the parties to early

7  neutral evaluation was entered July 5, 2011.

8        **13.**    **Consent to Magistrate Judge For All Purposes**

9  On April 8, 2011 DuPont filed a Request For Reassignment To A United States District

10  Judge (Docket #6).

11        **14.**    **Other References**

12  The parties do not believe that any other reference is necessary at this time.

13        **15.**    **Narrowing of Issues & Expedited Schedule**

14  USA PTI believes that the following scheduling may help narrow the issues and expedite

15  the handling of the case.  USA PTI believes that compliance with §2019 should be completed by

16  August 1, 2011, and disagreements and/or motion practice concerning compliance with this rule

17  should be undertaken by August 12, 2011, with possible need for intervention by the Court if

18  there is disagreement about compliance with the 2019 requirements.

19  By September 1, 2011, the parties should identify how the alleged trade secrets identified

20  in the 2019 statements were obtained by the accused party.

21  By October 1, 2011, the parties should have selected a neutral.

22  By November 12, 2011, the parties should have conducted their sessions with a Early

23  Neutral Evaluator.  Initial motion practice may narrow certain issues.  At an appropriate time, the

24  parties will meet and confer in connection with the eventual submission of a proposed pretrial

25  conference order in an effort to narrow the issues and/or regarding the possibility of presenting

26  evidence at trial through summaries or stipulated facts.

27  / / /

28  / / /

- 10 -

1      **16.**     **Expedited Schedule**

2      Apart from the injunctive relief that DuPont will seek, this is not the type of case that can

3  be handled on an expedited basis with streamlined procedures.

4      **17.**     **Scheduling**

5      The parties believe it is appropriate for the Court to defer entering a case scheduling

6  order until after the parties' have completed their section 2019.210 statements and an appropriate

7  protective order has been entered.

8      **18.**     **Trial**

9      The parties request a jury trial on all claims so triable.  The parties estimate trial to last

10  approximately 5-15 trial days, following jury selection.

11      **19.**     **Disclosure of Non-Party Interested Entities or Persons**

12      Said disclosures have been made. In DuPont's certification, it advised that, other than the

13  named parties, there is no such interest to report.  In Defendants' certification, they advised that

14  the following listed persons, associations of persons, firms, partnerships, corporations (including

15  parent corporations) or other entities (i) have a financial interest in the subject matter in

16  controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject

17  matter or in a party that could be substantially affected by the outcome of this proceeding:

18  Christina Liew, wife of Walter Liew.

19      Dated: July 15, 2011

20                          GLYNN & FINLEY, LLP

21                          CLEMENT L. GLYNN
MORGAN K. LOPEZ

22                          JONATHAN A. ELDREDGE
One Walnut Creek Center

23                          100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596

24                          MORRIS JAMES LLP

25                          P. CLARKSON COLLINS, JR.
JASON C. JOWERS

26                          500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

27

28                          By  /s/ Morgan K. Lopez
                              Attorneys for Plaintiff

JOINT CASE MANAGEMENT STATEMENT

1    Dated: July 15, 2011                MOUNT, SPELMAN & FINGERMAN, P.C.
                                         DANIEL S. MOUNT
2                                        KEVIN M. PASQUINELLI
                                         JING H. CHERNG
3                                        RiverPark Tower, Suite 1650
                                         333 West San Carlos Street
4                                        San Jose, CA 95110-2740

5                                        By  /s/ Kevin M. Pasquinelli
                                             Attorneys for Defendants USA Performance
6                                            Technology, Inc., and Walter Liew

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT